UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
|---|---|---|
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-1218-B |
| MATTHEW D. SAMPLE, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Security and Exchange Commission's (SEC) Motion for Monetary Remedies, in which the SEC asks the Court to order Matthew Sample to disgorge his ill-gotten gains, pay prejudgment interest on the disgorged amount, and pay a civil penalty (Doc. 10). The Court **GRANTS** the SEC's motion. First, the Court **ORDERS** Sample to disgorge $919,875 less restitution payments made to Lobo Fund victims. Second, the Court **ORDERS** Sample to pay prejudgment interest equal to the amount reached by applying the IRS underpayment interest rate to the amount Sample must disgorge as of the date of this order, which is $919,875 less restitution payments Sample has actually made to the Lobo Fund victims. And Third, the Court **ORDERS** Sample to pay a civil penalty of $919,875.

# I.

# BACKGROUND[1]

In December 2008, Sample created the Lobo Volatility Fund, LLC (Lobo Fund). Doc. 1, Compl., ¶8. From October 2009 to June 2012, Sample raised $982,000 from investors whom he promised he would invest their money and hopefully return them a profit. *Id.* at ¶9; Doc. 11, App'x, 36. But it was all a ruse. Sample used the invested funds for himself, spending the invested money on luxuries and paying investors from a prior scheme—all the while telling his victims he was investing their money. Doc. 1, Compl., ¶¶11, 15. To support his con, Sample created false IRS forms showing positive account balances and returns on investments. *Id.* at ¶12. And he refused to return investors' money to them when asked. *Id.* at ¶13. Though, he eventually returned $50,000. *Id.* at ¶15.

On April 4, 2014, the SEC filed this action, alleging that Sample's Lobo Fund scheme violated various federal securities laws. *Id.* at ¶¶17–25. Sample then agreed to a bifurcated settlement in which he neither admitted nor denied the SEC's allegations but agreed to be permanently enjoined from violating the securities laws. Doc. 3, Consent of Matthew Sample, ¶2. Sample agreed also that he would disgorge his ill-gotten gains, pay prejudgment interest on those gains, and pay a civil penalty. *Id.* at ¶3. Per the settlement agreement, the Court is now to decide how much Sample must pay. *Id.*

Also relevant is Sample's parallel criminal case. Doc. 11, App'x, 1. In a case brought by the United States Department of Justice, Sample pleaded guilty to mail and wire fraud. *Id.* at 11. On

---

[1] The facts are taken from the SEC's complaint and appendices to its Motion for Monetary Remedies. Per Sample's plea agreement, the complaint's allegations are deemed true.

March 23, 2015, a federal district court in New Mexico sentenced Sample to five years probation and ordered him to pay $1,086,453.62 in restitution to the victims of the Lobo Fund scheme and a prior fraudulent scheme. *Id.* at 29–33.

## II.

## ANALYSIS

*A.    Disgorgement*

A court may order a party to disgorge profits flowing from securities-law violations. *SEC v. Huffman*, 996 F.2d 800, 802–03 (5th Cir. 1993). Once the SEC has established that a defendant violated the securities laws, a court may order the defendant to disgorge a sum of money equal to all the illegal payments he received. *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, and then the burden shifts to the defendant to show that this figure is not a reasonable approximation. *SEC v. Amerifirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008). A court enjoys broad discretion in determining the amount to be disgorged. *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474–75 (2d Cir. 1996). Further, "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995).

Sample must disgorge $919,875, the amount Sample raised from the Lobo Fund investors less what he gave back to them. Doc. 1, Compl., ¶¶ 9, 15. Whether Sample lost in the market the money he collected or spent it, he must pay the net amount he collected from the Lobo investors. *See SEC v. Shapiro*, 494 F.2d 1301, 1309 (2d Cir. 1974) (holding that trading losses do not reduce the amount a fraudster must disgorge); *SEC v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987) ("The manner

in which [the defendant] chose to spend his misappropriations is irrelevant as to his objection to disgorge.").

But even though Sample agreed to disgorge his ill-gotten gains, he now contends he need not. Doc. 13, Resp., 5. Sample's argument hinges on the Supreme Court case *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), which Sample argues would make ordering him to disgorge an unlawful penalty. *Id.* at 5–6.

Sample is wrong. *Kokesh* merely held that disgorgement claims are subject to 28 U.S.C. § 2462's five-year statute of limitations . *Kokesh*, 137 S. Ct. at 1638. *Kokesh* had no effect on how courts apply disgorgement principles. *Id.* at 1642 n.3.

Sample asserts also that the restitution the New Mexico court ordered him to pay precludes this Court from ordering him to pay disgorgement. Doc. 13, Resp., 5–6. Again, Sample is incorrect. Neither has Sample cited nor the Court found cases that support Sample's assertion. Courts have actually ordered disgorgement in addition to restitution. *See, e.g.*, *SEC v. Palmisano*, 135 F.3d 860, 866–67 (2d Cir. 1998) (upholding disgorgement and restitution but crediting restitution payments to disgorgement amount).

But Sample can credit restitution payments to the Lobo Fund victims against the amount he must disgorge. *Id.* The SEC agrees but correctly points out that only some of Sample's restitution obligation—$1,086,453.62—applies to the Lobo Fund victims from this case. Doc. 16, Reply, 4–5. Two of the victims Sample must pay restitution were not victims of the Lobo Fund scheme. *Id.* The amount Sample must pay in restitution to the Lobo Fund victims is $730,195.75. Doc. 17, App'x, 25. Thus, $730,195.75 is the most Sample's restitution obligation can offset the $919,875 Sample must disgorge.

The SEC is correct also that Sample can receive a credit only for amounts he actually pays in restitution. Doc. 16, Reply, 5–6. Any restitution payments Sample makes to the Lobo Fund victims will therefore reduce his disgorgement obligation. Thus, the Court **ORDERS** Sample to disgorge an amount equal to $919,875 less what he pays the Lobo Fund victims in restitution.

B.  *Prejudgment Interest*

The SEC requests also prejudgment interest on Sample's disgorgement. Doc. 10., Mot. Monetary Remedies, 10. The Court may award prejudgment interest on disgorgement amounts to prevent a defendant from benefitting from an essentially interest-free loan resulting from illegal activity. *SEC v. Jakubowski*, No. 94 C 4539, 1997 WL 598108, at *2 (N.D. Ill. Sept. 19, 1997). In federal securities cases, courts generally calculate prejudgment interest by applying the underpayment rate published by the Internal Revenue Service ("IRS"). *SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007). According to SEC regulations, "[p]rejudgment interest shall be due from the first day of the month following each such violation through the last day of the month preceding the month in which payment of disgorgement is made," and "interest shall continue to accrue on all funds owed until they are paid." 17 C.F.R. § 201.600(a).

Based on the current record, the Court cannot calculate the amount Sample owes in prejudgment interest. The amount Sample owes in prejudgment interest must be based on the amount he must disgorge as of the date of the disgorgement order. But the amount he must disgorge must be reduced by the amount he pays in restitution to the Lobo Fund Victims. Thus, Sample must pay in prejudgment interest the amount reached by applying the IRS underpayment interest rate to the amount Sample must disgorge as of the date of this order, which is $919,875 less restitution payments Sample has actually made to the Lobo Fund victims.

C.  *Civil Penalty*

The securities laws authorize three tiers of civil penalties.[2] To impose a first-tier penalty, the SEC need only show that the defendant violated the securities law. 15 U.S.C. § 77t(d)(2)(A). A first-tier penalty cannot exceed the greater of $7,500 per violation or the defendant's gross pecuniary gain. 17 C.F.R. § 201.1004. To impose a second-tier penalty, the SEC must show that the defendant's violation of the securities laws "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B). A second-tier penalty cannot exceed the greater of $75,000 per violation or the defendant's gross pecuniary gain. 17 C.F.R. § 201.1004. And to impose a third-tier penalty, the SEC must show that the defendant's violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C). A third-tier penalty cannot exceed the greater of $150,000 per violation or the defendant's gross pecuniary gain. 17 C.F.R. § 201.1004. To determine how severe of a penalty to impose, courts consider

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Reynolds*, No. 3:08-CV-0438-B, 2013 WL 3479825, at *5 (N.D. Tex. July 11, 2013). Courts consider also whether a defendant has admitted wrongdoing. *SEC v. Life Partners Holdings, Inc.*, 71

---

[2] The SEC's complaint alleges that Sample violated the Securities Act, the Exchange Act, and the Advisers Act. The citations in this paragraph are to the Securities Act, but the penalty tiers in the Exchange Act, 15 U.S.C. § 78u(d)(3), and the Advisers Act, 15 U.S.C. § 80b-9(e)(2), are the same as in the Securities Act, 15 U.S.C. § 77t(d)(2).

F. Supp. 3d 615, 623 (W.D. Tex. 2014). Different from disgorgement, which primarily aims to remove a defendant's profit from illegal transactions and "merely places the offender in the same position he would have been in had he not committed the offense," monetary penalties are designed to serve as deterrents against securities-laws violations. *SEC v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001).

Sample is eligible for a third-tier civil penalty. Based on what Sample admitted in his plea agreement, Samples's scheme involved "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Sample admitted that he

- misappropriated substantial amounts of his clients' money for his personal use, Doc. 11, App'x, 12–14;
- knew his conduct was illegal, *id.* at 12, 14;
- lied to his clients about losses he was incurring, *id.* at 14;
- created fake account statements to deceive his clients and hid the fact that he lost or spent their money, *id.* at 14–15;
- was a veteran of the securities industry and was thus aware of the federal securities laws, *id.* at 14, 17; and
- made ponzi payments by using a new investor's funds to pay alleged returns to an existing investor, *id.* at 15–16.

Given that Sample has agreed to pay a civil penalty, is eligible for a tier-three penalty, and that he has admitted to egregious conduct he knew was unlawful, Sample must pay the gross account amount of his pecuniary gain from the Lobo Fund scheme: $919,875. Again, this is the amount

Sample collected from the Lobo Fund victims minus the amount he gave back to them. Doc. 1, Compl., ¶¶9, 15.

Sample's arguments that he should receive only a minimal civil penalty fail. Doc. 13, Resp., 6. First, Sample argues that, under the fourth factor above, his conduct should be considered an isolated occurrence because the Lobo Fund scheme and the prior scheme for which he was prosecuted in New Mexico along with the Lobo Fund scheme are a single instance of unlawful conduct. *Id.* But, even if the Court considers the two schemes a single course of conduct, Sample's unlawful conduct lasted for more than five years, and courts have considered fraudulent conduct that continues over an extensive period of time recurrent. *See, e.g.*, *SEC v. Zada*, 787 F.3d 375, 383 (6th Cir. 2015) (imposing third-tier penalty when conduct "continued over an extensive period of time"). At any rate, the Fourth factor does not weigh enough in Sample's favor to reduce his penalty given the egregiousness of the conduct to which he has admitted.

Second, Sample argues for a low penalty based on his inability to pay. Doc. 13, Resp., 6 But a defendant must establish inability to pay by a preponderance of the evidence. *Huffman*, 996 F.2d at 803. Because Sample has not presented evidence of his inability to pay, Sample's argument fails.

Third, Sample pleads for leniency on the grounds that he has freely admitted wrongdoing. *Id.* But Sample did not freely admit wrongdoing in this case. In his plea agreement with the SEC, he did not admit wrongdoing. Doc. 3, Consent of Matthew Sample, ¶2. Nor did Sample plead guilty in his criminal case until 20 months after his plea agreement with the SEC. Doc. 11, App'x, 10. Even if the Court considered Sample's guilty plea in his criminal case relevant, that alone would not persuade the Court to impose a lower penalty given the egregiousness of Sample's scheme and the losses he caused his victims.

## III.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the SEC's Motion for Monetary Remedies. First, the Court **ORDERS** Sample to disgorge $919,875 less restitution payments made to Lobo Fund victims. Second, the Court **ORDERS** Sample to pay in prejudgment interest the amount reached by applying the IRS underpayment interest rate to the amount Sample must disgorge as of the date of this order, which is $919,875 less restitution payments Sample has actually made to the Lobo Fund victims. And Third, the Court **ORDERS** Sample to pay a civil penalty of $919,875.

**SO ORDERED.**

**DATED: November 20, 2017.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE